UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| SUSAN ALEXANDER, <br><br> Plaintiff, <br><br> V. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Civil No. 5:18-cv-00163-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Susan Alexander seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Alexander's claim for supplemental social security. [Transcript (hereinafter, "Tr.") 24.] Alexander brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the Administrative Law Judge ("ALJ") considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Ms. Alexander's Motion for Summary Judgment [R. 12] and will GRANT the Commissioner's [R. 14.]

**I**

**A**

Plaintiff Alexander filed an application for supplemental social security in January 2015, alleging disability beginning on January 9, 2015. [Tr. 12.] Alexander's motion for summary judgment explains she suffers from various neck and back conditions, obesity, diverticulitis, fibromyalgia, epicondylitis, migraine headaches, anxiety, and depression. [Tr. 15.] Alexander's

claims for supplemental social security were initially denied on May 15, 2015 and upon reconsideration on August 24, 2015 [Tr. 12.] Subsequently, a hearing was conducted upon Alexander's request. [*Id.*] Following the hearing, ALJ Roger L. Reynolds issued a final decision denying Alexander's claims. [Tr. 24.] Alexander, who was 47 years old at the time of the alleged disability onset, has a GED and some technical college classes, and past relevant work as a medical records clerk and front office assistant. [R. 12-1 at 3.] The vocational expert who participated in the hearing testified that the demands of positions such as inspector or tester, assembly/bench work, and machine tender do not exceed Alexander's residual functional capacity. [Tr. 23.] Finding the vocational expert's testimony sufficiently consistent with other relevant evidence and the Dictionary of Occupational Titles (there was a slight discrepancy in the expert's use of a "sit stand option" that is not in the DOT, but was otherwise consistent), the ALJ determined Alexander is capable of "making a successful adjustment to other work that existed in significant numbers in the national economy." [*Id.*]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. 404.1520 First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any

impairment experienced by the individual. *See* 20 C.F.R. 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

In this case, at Step 1, the ALJ determined that Alexander did not engage in substantial gainful activity from the date of her alleged onset disability through her date last insured. [Tr. 15.] At Step 2, the ALJ found Alexander to suffer from the severe impairments of chronic neck and upper extremity pain and weakness secondary to degenerative disc disease of the cervical spine, status post C5/6 discectomy and fusion, obesity, diverticulitis, degenerative disc disease of the lumbar spine, fibromyalgia, history of right epicondylitis, migraine headaches, anxiety, and depression. [*Id.*] At Step 3, the ALJ found Alexander's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 18.] Before moving on to Step 4, the ALJ considered the entire record and determined

Alexander possessed the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), with certain limitations described as follows:

> [T]he claimant requires a sit stand option with no prolonged standing or walking in excess of 30 minutes without interruption; no sitting in excess of 15 minutes to one hour without interruption; frequent use of the hands for pinching, feeling, fingering, grasping, or pushing/pulling; no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps, occasional balancing, stooping, kneeling, crouching, or crawling; no work with hands over the head; no operation of foot pedal controls; should perform work with only occasional need to turn the head; no exposure to concentrated vibration or industrial hazards; requires entry level work with simple repetitive procedures; can tolerate only occasional changes in work routines; and should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

[Tr. 20.] After explaining in detail how he determined Alexander's RFC [Tr. 20-22], the ALJ found at Step 4 that, based on this RFC, Alexander is capable of performing jobs that existed in significant numbers in the national economy. [Tr. 22.] Accordingly, the ALJ concluded Alexander was not disabled under §§ 216(i) and 223(d) of the Social Security Act. [*Id.*] The Appeals Council declined to review the ALJ's decision on January 9, 2018 [Tr. 1-4], and Alexander now seeks judicial review in this Court.

**B**

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts."

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

First, Alexander alleges the ALJ failed to provide sufficient reasons for discounting her treating physician's RFC. As a default rule, more weight should be given to treating sources than to non-treating ones. 20 C.F.R. §404.1527(c)(2). However, the applicable Social Security regulation provides exceptions to this "treating physician rule" in certain situations. The text of the regulation reads:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give

5

> the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

*Id.* The factors used by an ALJ in determining the weight to give a treating source opinion when it is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability, the opinion's consistency with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. § 416.927(d)(2)(i)-(ii), d(3)-d(5). Thus, "'[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary.'" *Haradaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (quoting *Bastien v. Califano*, 572 F. 2d 908, 912 (2d Cir. 1978).

Further, an ALJ is required to set forth some basis for the decision to reject a treating source opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) (noting that in cases where the treating physician rule applies, a reviewing court must evaluate whether the ALJ gave good reasons for his decision not to give controlling weight to a treating source opinion, as required by the governing regulation).

The treatment records specifically cited by Alexander in support of her position do not convince the Court that the ALJ's decision lacked a basis in substantial evidence. The ALJ explained Dr. Ellis' opinion was not accepted because it "appears to rely on Ms. Alexander's subjective report of her symptoms, which are generally inconsistent with physical examination findings." [Tr. 21.] Dr. Ellis found Alexander was in "no acute distress" with "very good" range of motion in her neck and "normal reflexes in the lower extremities." [Tr. 853.] Though she presented with reduced cervical ranges of motion, she appeared comfortable and in no acute

distress. [Tr. 814, 816.] These findings were determined by the ALJ to "not support the extremely limiting functional assessment," [Tr. 12] which determined Alexander had an "extreme limitation" in her ability to participate in competitive employment [Tr. 873.] The Court finds this to be a sufficient reason not to accept Dr. Ellis' opinion that Alexander had limited exertional capacity. [Tr. 873.]

Dr. Ellis' opinion is also inconsistent with the record as a whole, which is another factor the ALJ can use in determining the weight to give a treating source opinion. 20 C.F.R. § 416.927(c)(2). Dr. Ellis' RFC notes degenerative spine disease of the lumbar and cervical spine [Tr. 872], which is inconsistent with x-rays from two months earlier noting only mild degenerative changes [Tr. 843]. Around the same time, Alexander had a "normal gait, no weakness or spasticity" and "good spinal alignment" [Tr. 835], which is inconsistent with Dr. Ellis' determination that Alexander had muscle spasms and weakness [Tr. 873]. The report's limited findings were also inconsistent with a third party function report describing an ability to do limited light work such as laundry and shopping, going to church, and handling money. [Tr. 21, 330-36.] The Court also finds these to be sufficient reasons to reject Dr. Ellis' opinion. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997).

Finally, as the ALJ noted, this examination took place after Alexander's date last insured. [Tr. 22.] Ellis provided no indication that the limitations he observed in March 2017 were present before the date last insured. *See* [Tr. 872-76.] Even if the Court could overcome the fact that the opinion rendered addressed a time after her date last insured, Dr. Ellis' opinion was properly weighed for other reasons explained above.

On the whole, the ALJ satisfied his duty to set forth good reasons he chose not to accept Dr. Ellis' residual functional assessment because there was substantial evidence to support this

7

decision. *See Barnhart*, 116 F. App'x at 725; *Walters*, 127 F.3d at 530; *Shelman*, 821 F.2d at 321. In light of this, the Court cannot find the ALJ erred in his consideration and rejection of Dr. Ellis' medical opinion.

## B

ALJ Reynolds determined that the new evidence Alexander presented since her prior denial show that she is capable of a range of light work, supporting the same RFC as ALJ Holsclaw had previously found. [Tr. 12.] Alexander argues that this determination was an improper application of the "principles of *res judicata*" that fails to consider her changed circumstances. [R. 12-1 at 10-12]; *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997) (citing *Cottrell v. Sullivan*, 987 F.2d 342, 344 (6th Cir. 1992); *Carver v. Secretary of Health & Human Servs.*, 869 F.2d 289, 291 (6th Cir. 1989)).

The RFC is the Commissioner's assessment of the most a claimant can still do, both physically and mentally, despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009). This decision is to be made by the Administrative Law Judge after reviewing the entire record. 20 C.F.R. §§ 404.1520(e); 416.920(e); 404.1545; 416.945; SSR 96-8. Previously, *Drummond*, required that previous ALJ's findings and determinations are controlling in subsequent, unadjudicated periods unless there is new and material evidence or a showing of "changed circumstances." *Drummond*, 126 F.3d at 842. However, the Sixth Circuit recently clarified that *Drummond* does not "prevent the agency from giving a fresh look to a new application," and that an ALJ can view, without new and additional evidence, the first ALJ's findings as a "legitimate, albeit not binding, consideration." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931, 933 (6th Cir. 2018).

The petitioner argues that the ALJ failed to consider changes in her condition and improperly adopted ALJ Holsclaw's prior RFC for light work. *See* [R. 12-1 at 10-12.] She specifically argues ALJ Holsclaw did not find migraine headaches to be a severe impairment, and did not find any severe cervical spinal impairment, both of which ALJ Reynolds did find. [R. 12-1 at 11]. For reasons discussed above, ALJ Reynolds did not err in discounting the opinion of Dr. Ellis, which Alexander relies on to show her changed conditions. The plaintiff also relies on her treatments from Dr. Tibbs, including a spinal surgery he performed on Alexander [Tr. 582-85.] and an examination which occurred after her date last insured [Tr. 835-36.] The ALJ deferred to Dr. Tibb's objective findings from that examination, which include "normal gait, no apparent distress no weakness or spasticity, no atrophy, negative straight leg raising, and 5/5 strength," rather than Dr. Ellis' subjective findings. [Tr. 21-22, 835-36.]

*Drummond* does not require an ALJ that considers new evidence to make a different determination than the previous ALJ, only that they weigh the new evidence appropriately. *Drummond*, 126 F. 3d at 842. ALJ Reynolds did so and had sufficient evidence to find Alexander had an RFC for light work. This is additionally supported by the fact that ALJ Reynolds found more limitations on Alexander's capabilities than ALJ Holsclaw (though he states he "adopts" that determination). [Tr. 12-13.] Specifically, he found Alexander could never work with her hands over her head or use foot controls, both of which ALJ Holsclaw believed Alexander could perform. [Tr. 20, 146-47]; *See Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 726 (6th Cir. 2013); *Perry v. Comm'r of Soc. Sec.*, 501 Fed. Appx. 425, 427 (6th Cir. 2012). These alterations and the ALJ's discussion of the new evidence show that he considered the new evidence, and did not simply apply *res judicata* in "adopting" ALJ Holsclaw's RFC. [Tr. 12-13.] The ALJ even stated that, though the plaintiff's circumstances had changed, his own findings

support "the same findings as in the 2013 decision." [Tr. 12.]  The Court finds there was sufficient evidence to determine the evidence supported the same RFC as ALJ Holsclaw had previously given.

## III

In conclusion, the Court finds no error in how the ALJ weighed the evidence when determining Alexander's RFC. Substantial evidence exists in the record to support the ALJ's conclusions.  Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion.  *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Alexander's motion for Summary Judgment [R. 12] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 14] is **GRANTED**;

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 24th day of May, 2019.

Gregory F. Van Tatenhove
United States District Judge